KATHERINE M. *et al.*, Minors, Indiv. and on Behalf of all Other Similarly Situated Individuals, by Their Next Friend and Guardian *ad litem*, Patrick Murphy, the Cook County Public Guardian, Minors and Plaintiffs-Appellees, v. STERLING M. RYDER, Director of the Department of Children and Family Services, *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—93—1619

Opinion filed September 14, 1993.

Roland W. Burris, Attorney General, of Springfield (Roger P. Flahaven, Assistant Attorney General, of Chicago, of counsel), and Skadden, Arps, Slate, Meagher & Flom, of Chicago (Christina M. Tchen, John P. Buckley, Kimberley K. Baer, and Barry R. Conybeare, of counsel), for appellants.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs filed this class action suit through their guardian *ad litem*, the Cook County public guardian, on behalf of themselves and other children who are or will be sexual abuse victims or perpetrators while in the custody of the Department of Children and Family Services (DCFS). Defendants Sterling Ryder and Gary Morgan were sued in their respective official capacities as Director and guardianship administrator of DCFS (all defendants collectively DCFS). Plaintiffs sought declaratory and injunctive relief under the Juvenile Court Act (Ill. Rev. Stat. 1991, ch. 37, par. 801—1 *et seq.* (now 705 ILCS 405/1—1 *et seq.* (West 1992))) and the Children and Family Services Act (Ill. Rev. Stat. 1991, ch. 23, par. 5001 *et seq.* (now 20 ILCS 505/1 *et seq.* (West 1992))), alleging that DCFS provided inappropriate placements for them, failed to adequately supervise them in those placements, and denied them necessary counseling and other treatment to address sexual abuse upon them or their own perpetration of sexual abuse.

In response, DCFS filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))), and another pursuant to section 2—619 (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))). In the section 2—615 motion, DCFS asserted plaintiffs failed to state a cause of action because neither the Juvenile Court Act nor the Children and Family Services Act created a private right of action on behalf of wards of DCFS. In the section 2—619 motion, DCFS asserted that because plaintiffs sought virtually the same relief granted in an earlier Federal class action against DCFS, B.H. v. Johnson (N.D. Ill.), No. 88 C 5599, the cause was moot or, in the alternative, that because the Federal case constituted a prior pending action between the parties, the case should be dismissed. The circuit court denied the motions, but certified the issues for interlocutory appeal. On May 28, 1993, we granted DCFS' petition

for leave to appeal pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308).

On February 10, 1993, plaintiffs, minors in DCFS custody, filed a complaint in the circuit court alleging that "[i]nstead of protecting them, *** defendants habitually place[d] children whom they know to be sexual abuse perpetrators in the same homes or facilities with children whom they know to be vulnerable to sexual victimization." As a result of this practice, they alleged, children in DCFS custody were being sexually abused or engaging in sexually abusive activities with other children. Plaintiffs sued on their own behalf and on behalf of all others similarly situated. The class was defined as:

> "all children who are or will be subjects of abuse, neglect or dependency petitions filed in the Circuit Court of Cook County, who have been or will be placed in the custody or guardianship of DCFS, and who are exposed to, suffered or perpetrated sexual abuse."

Plaintiffs specifically alleged that DCFS "failed and continued to fail to provide minimally adequate placement, medical care, training, shelter, treatment and other services" required by the Children and Family Services Act and the Juvenile Court Act.[1] They maintained that although they required "highly specialized residential treatment," they were placed in foster homes, group homes, shelters, and residential facilities where foster parents or staff were not informed of their history prior to placement. They asserted that DCFS also failed to provide adequate treatment and supervision, as a result of which they "have suffered and continued to suffer severe and irreparable physical, psychological and emotional harm and distress."

In their prayer for relief, plaintiffs sought the creation of specialized placements to provide necessary services for children who are either sexual abuse perpetrators or sexual abuse victims. Plaintiffs also desired assurance that determinations of appropriate services be made by qualified and experienced professionals, and that all specialized placements be staffed by qualified professionals experienced in the treatment of juvenile sexual abuse perpetrators and victims. Finally, plaintiffs sought a requirement that DCFS notify the public guardian of any proposed placement changes for any member of the plaintiff class.

---

[1]Plaintiffs also claimed that DCFS actions constituted "willful and wanton misconduct" and "intentional infliction of severe emotional distress," and sought injunctive and declaratory relief. The circuit court dismissed those counts without prejudice. Those portions of the court's ruling are not at issue in this appeal.

As noted, DCFS moved to dismiss the complaint on two grounds. First, pursuant to section 2—615, it asserted that no private cause of action existed under either the Juvenile Court Act or the Children and Family Services Act. It maintained that while the statutory provisions relied upon by plaintiffs required it to provide services, what specific services to provide was a matter for its discretion. It also asserted that the complaint should have been dismissed in its entirety pursuant to section 2—619(a)(9) because it was rendered moot by the Federal consent decree in B.H. v. Johnson (N.D. Ill. Dec. 20, 1991), No. 88 C 5599 (hereafter *B.H.*), or pursuant to section 2—619(a)(3) because *B.H.* constitutes a prior-filed pending action between the same parties for the same cause.

At the hearing on the motions to dismiss, the circuit court initially noted the "extremely sweeping" nature of the Federal consent decree, but then stated that the instant case had a different "focus" from that of *B.H.* The court referred to the fact that plaintiffs here were "concerned specifically with regard to children who have been sexually abused," rather than those who had been abused in general as the *B.H.* plaintiffs had asserted. The court also noted that approximately 14 months remained until the consent decree was to be fully implemented on July 1, 1994, while the instant complaint raised the issue of "immediacy."[2] The court then denied DCFS' section 2—619 motion, finding that the doctrines of mootness and prior pending action were inapplicable because "although the consent decree may ultimately correct the problem which the plaintiffs highlight, the consent decree does not do it now." The court also denied DCFS' section 2—615 motion to dismiss. This appeal followed.

DCFS first contends that the circuit court erroneously denied its section 2—619(a)(9) motion to dismiss on mootness grounds because it is already required to provide plaintiffs with the relief they seek under the Federal consent decree and because the continued litigation of this action could subject it to inconsistent judgments. Plaintiffs respond that the consent decree does not address any of the specific issues raised in this case and therefore could not render it moot. In the alternative, plaintiffs assert that if the issues are moot, the court may

---

[2]In response to the circuit court's query as to what time period would be necessary to implement the relief sought in the complaint, the public guardian indicated that approximately one year would be the shortest period before such relief could be in effect.

nevertheless consider them because they concern matters of great public interest.[3]

DCFS maintains that the issues are moot because plaintiffs constitute a subset of the plaintiff class in *B.H. v. Johnson*, and because under the consent decree reached in the Federal case, DCFS is already required to provide the services plaintiffs seek here. In *B.H.*, the plaintiff class was certified as:

> "all persons who are or will be in the custody of the Illinois Department of Children and Family Services and who have been or will be placed somewhere other than with their parents."

*B.H. v. Johnson* (N.D. Ill. 1989), 715 F. Supp. 1387, 1389.

The plaintiffs there alleged[4] that while in DCFS custody, they incurred serious damage to their mental health and physical well-being because DCFS failed to provide safe and suitable placements for them; that DCFS "warehoused" them in violent and overcrowded shelters and psychiatric hospitals and placed them in foster homes where many of them were victims of the very kinds of abuse and neglect which prompted them to be removed from their homes; and that DCFS failed to provide them with adequate physical and mental health care, education, shelter, clothing, and food. The plaintiffs based their lawsuit on their rights under the fourteenth amendment to the United States Constitution and the Federal Adoption Assistance and Child Welfare Act of 1980 (42 U.S.C. §670 *et seq.* (1988)).

After the Federal district court rejected DCFS' motion to dismiss and held that the plaintiffs had a fourteenth amendment substantive due process claim, as well as a right of action under the Adoption Assistance and Child Welfare Act (see *B.H.*, 715 F. Supp. at 1405), the parties reached an agreement which the court approved. Thereafter, a

---

[3]Plaintiffs also allege that DCFS waived any challenge to a State-law cause of action when its attorney stated to the Federal court that the consent decree did not preclude future State-law claims. However, the transcript of that proceeding reveals that the Federal court was concerned with precluding future State actions "which were very different from what [was] provided in the decree" on the basis of *res judicata*. Because plaintiffs here seek relief which is not "very different" from that in the decree, we conclude that this is not the type of action with which the district court was concerned.

[4]Although the *B.H.* complaint was not provided to the circuit court, we may consider it in our determination of whether the instant case is moot. See *Dixon v. Chicago & North Western Transportation Co.* (1992), 151 Ill. 2d 108, 116-17, 601 N.E.2d 704 (stating that "[a] reviewing court can take judicial notice of events or facts which, while not appearing in the record, disclose that an issue has been mooted").

consent decree was entered on December 20, 1991.[5] Under the decree, DCFS is expected to achieve a comprehensive reform of the child welfare system in Illinois. Although the terms of the decree require DCFS to complete implementation by July 1, 1994, in order to monitor and enforce compliance, the Federal court will retain jurisdiction over the matter until at least June 30, 1999. Furthermore, a court-appointed monitor is charged with evaluating and reporting on implementation and compliance with the decree.[6]

Under the decree, DCFS must ensure that within 24 hours of entering its protective custody all children receive an "initial health screening" to determine any immediate health needs, as well as "any

---

[5]We note that the public guardian has repeatedly expressed his dissatisfaction with the consent decree and the subsequent implementation plan. He twice sought to intervene in the *B.H.* action, "complaining that the counsel for the plaintiffs' class [the American Civil Liberties Union] were inadequately representing them." (*B.H. v. Murphy* (7th Cir. 1993), 984 F.2d 196, 198.) The district court rejected his motions on the grounds that they were filed too late in the proceeding and that he was unable to demonstrate why his expertise was essential to the resolution of the case. (984 F.2d at 198.) The Seventh Circuit found that because he failed to appeal the denial of his first motion, the appeal of the court's ruling on the second was untimely. Despite the district court's ruling, however, the public guardian was allowed to introduce evidence and cross-examine witnesses during the hearing conducted to determine whether the proposed settlement was fair and adequate.

The public guardian also has attempted to litigate a Federal class action for "all children who are or will be subjects of *** petitions filed in [Cook County] Juvenile Court, who are or will be denied adequate care and treatment due to [DCFS'] practice of placing them in multiple and/or abusive foster homes, group homes, shelters and residential institutions." (*K.H. v. Suter* (N.D. Ill. 1991), 765 F. Supp. 432, 433.) The Federal court found, however, that the *K.H.* complaint "parallel[ed]" the *B.H.* class action, which was still pending at that time. The court therefore held that the proposed *K.H.* class was a subclass of *B.H.* and that considerations of judicial economy and comity necessitated that the *K.H.* complaint be struck. *K.H.*, 765 F. Supp. at 434.

In addition, the public guardian has recently sought certification of a class action for "all children in DCFS custody who have physical handicaps attributable to prenatal ingestion of illegal drugs or to the HIV virus and who remain hospitalized although they are medically ready for release and available for placement in foster homes or residential settings." (*Frederick N. v. Suter* (N.D. Ill.), No. 91 C 6104.) Judge Grady, the same judge who oversaw *B.H.*, denied the public guardian's motions for class certification and preliminary injunction because the proposed class was included in the *B.H.* class and no reason existed to create a separate class. The court further noted that the public guardian never alleged that his requests to consult with the court-appointed monitor or with the *B.H.* counsel regarding those particular children had been denied.

[6]Joseph Schneider, the former presiding judge of the county division of the circuit court of Cook County, currently serves as the court-appointed monitor.

health information needed to make an informed placement decision." DCFS must then conduct a "comprehensive assessment" on all children performed by "qualified personnel," in order to ascertain any special needs. A written case plan must then be prepared for each child, which must include "the identification and provision for any special needs of the child resulting from conditions which cause the child to suffer serious functional impairment." Such conditions expressly include "sexual abuse." "The case plan *** will indicate the actions that will be required, who will be responsible for taking those actions, and the services or other support that will be necessary to carry out the plan." In order to insure that the necessary services and assessments are provided, and that appropriate placements are made, DCFS must assign a "specially trained and qualified case manager" to each child with special needs. Finally, DCFS must develop a sufficient number of safe foster homes, as well as therapeutic and residential placements. All caretakers must be adequately trained, and DCFS must communicate to the caretaker "as soon as possible" any information relevant to the care of the child which was obtained as a result of the assessment process.

The implementation plan prepared pursuant to the consent decree indicates that DCFS "has already established a new institutional facility specifically targeted to serve children and adolescents who are sexual perpetrators." It also states that DCFS has developed a series of workshops for its employees on "the extensive training protocols for identifying, assessing, managing, and treating these youth." Moreover, the addendum to the plan states that DCFS "has been engaged with the Legal Assistance Foundation of Chicago in a lengthy process of identifying and developing services for juvenile sex offenders." The addendum also shows that over 1,000 professionals have been trained in assessment and service delivery to juvenile sex offenders and, though the agency formerly had contracts for only two specialized placements for juvenile sex offenders, it now has 44. Also, the 1994 fiscal year annual plan states that 11 "Regional Juvenile Sex Offender Resource Libraries" have been established for use by caseworkers, supervisors, and administrative staff. A specialized database was created in July 1992 to ensure that all reports of alleged sexual abuse by DCFS wards are reported to the regional juvenile sex offender specialists, who are then available to assist the assigned caseworker.

■ Under Illinois law, a matter is considered moot when no controversy remains or the issues involved cease to exist, thereby rendering it impossible for the court to grant effective relief to the complaining party. (*First National Bank v. Kusper* (1983), 98 Ill. 2d 226,

233-34, 456 N.E.2d 7; *Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 343, 546 N.E.2d 651.) Actions will be dismissed as moot once "[t]he plaintiffs have secured what they basically sought." *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 241, 278 N.E.2d 81 (holding that an action for *mandamus* was moot where the Department of Public Aid had already issued the desired regulation in a separate proceeding); see also *Wheatley v. Board of Education of Township High School District 205* (1984), 99 Ill. 2d 481, 485, 459 N.E.2d 1364 (holding that a class action seeking reinstatement of teaching positions was moot where the named representative plaintiffs accepted the Board's offer of employment); *Thurman v. Department of Public Aid* (1974), 25 Ill. App. 3d 367, 369, 323 N.E.2d 502 (finding the issues moot where the defendant adopted new standards providing the plaintiffs their desired relief).

An exception to the mootness doctrine may be applied, however, when a case presents an issue of "substantial public interest." (*In re A.F.* (1991), 234 Ill. App. 3d 1010, 1013, 602 N.E.2d 480.) Whether a sufficient degree of public interest exists in a particular case depends upon "the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622, 104 N.E.2d 769.

■ Plaintiffs here seek improved methods of determining appropriate placements, better supervision at their placements, the creation of specialized placements, and better training of caseworkers and caretakers. Because, however, they are necessarily a subclass of the expansive *B.H.* class of all children in DCFS custody, plaintiffs' needs are fully covered by the consent decree and the subsequent implementation plan. Since the plan does make the systemic changes that plaintiffs request, albeit not specifically designed only for the subclass of sexual abuse victims and perpetrators, plaintiffs cannot deny that they "have secured what they basically sought." Furthermore, the fact that the final implementation of the plan will not occur until July 1, 1994, is not sufficient to raise the public interest exception to the mootness doctrine, especially in view of the public guardian's own estimate that at least one year would be necessary to implement any State-court plan. While the issue is one of great public interest, we are satisfied that the Federal court is an adequate forum and that ultimate resolution of the Federal case will produce a comprehensive transformation of the child welfare system. In the meantime, the Federal court has retained jurisdiction over the matter until at least 1999,

and any current and future problems can be resolved there. Because we conclude that plaintiffs' cause of action was rendered moot by the Federal consent decree, we reverse the circuit court's ruling to the contrary.

■ Moreover, the circuit court improperly denied DCFS' motion pursuant to section 2—619(a)(3) because *B.H.* constitutes a prior pending action between the same parties for the same cause. Under section 2—619(a)(3) of the Code of Civil Procedure, a defendant may move to dismiss on the ground that "there is another action pending between the same parties for the same cause." "Same cause" occurs when relief is requested on substantially the same set of facts. (*Skolnick v. Martin* (1964), 32 Ill. 2d 55, 57, 203 N.E.2d 428; *Terracom Development Group, Inc. v. Village of Westhaven* (1991), 209 Ill. App. 3d 758, 762, 568 N.E.2d 376.) The same cause requirement may be satisfied even if the parties to the two actions are not identical and differ in both name and number. (*Skipper Marine Electronics, Inc. v. Cybernet Marine Products, Inc.* (1990), 200 Ill. App. 3d 692, 695-96, 558 N.E.2d 324.) Under section 2—619(a)(3), all that is necessary is that the litigants' interests are "sufficiently similar." (*Skipper Marine*, 200 Ill. App. 3d at 695-96.) The determination of a motion to dismiss is a matter within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. *A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 253, 419 N.E.2d 23.

We consider it readily apparent that the instant case is for the "same cause" as *B.H.* Both cases seek to remedy the problems inherent in placement decisions and both seek remedial relief by requiring DCFS to provide more placements with better trained staffs and caretakers. While it is true that under the *Pennhurst* doctrine (*Pennhurst State School & Hospital v. Halderman* (1984), 465 U.S. 89, 79 L. Ed. 2d 67, 104 S. Ct. 900 (prohibiting pendent State-law claims against State officers in Federal courts)), the *B.H.* plaintiffs were unable to assert the State-law claims, that fact is irrelevant to the determination of a section 2—619(a)(3) motion. The statute is designed to avoid duplicative litigation (*Kellerman v. M C I Telecommunications Corp.* (1986), 112 Ill. 2d 428, 447, 493 N.E.2d 1045), and the central inquiry is whether the two actions arise out of the same transaction or occurrence, and not whether the legal theories or the relief sought materially differs between the two actions. *Terracom*, 209 Ill. App. 3d at 762.

Moreover, because plaintiffs here are members of the *B.H.* class, and because both cases were brought against the director of DCFS in his official capacity, there can be no question that the actions are between the "same parties."

In reversing the circuit court's ruling, we are mindful of the grave allegations raised here and of the need for extensive remedial measures. Because the Federal court has already addressed and continues to address the very issues presented by this case, however, we conclude that that forum is the appropriate one for plaintiffs' grievances. There, the public guardian should be able to coordinate his efforts with the ongoing ones of the *B.H.* counsel and the court-appointed monitor. Through such cooperation, the children, those whose lives they touch, and society as a whole will best be served.

Because we reverse the court's ruling on DCFS' section 2—619 motion to dismiss, we need not address DCFS' other contention on appeal that neither the Juvenile Court Act nor the Children and Family Services Act creates a private right of action.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McCORMICK, P.J., and SCARIANO, J., concur.