SOFTA GROUP, INC., Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. SCARSDALE DEVELOPMENT, Defendant and Counterplaintiff-Appellant and Cross-Appellee.

First District (3rd Division)   No. 1—91—1723

Opinion filed March 31, 1993.

Ruben, Kaplan & Rosen, of Skokie (Bernard M. Kaplan, of counsel), for appellant.

Gordon & Glickson, P.C., of Chicago (Jean Marie R. Pechette and Gregory J. Bueche, of counsel), for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This action was brought by plaintiff to recover the sum of $5,672.62 from defendant for the sale and delivery of certain computer hardware components and computer software programs sold by plaintiff to defendant. Defendant filed an answer and counterclaim, admitting the purchase and receipt of the equipment, but alleging the computer equipment to be defective almost from its inception, causing defendant to incur substantial damage. Upon plaintiff's motion, summary judgment was entered in its favor in the amount of $5,672.62. Defendant appeals from this judgment. Plaintiff cross-appeals for prejudgment interest on the award.

According to plaintiff, on or about September 17, 1986, defendant, Scarsdale Development (Scarsdale), agreed to purchase various computer hardware and software products from plaintiff, the Softa Group, Inc. (Softa). In consideration for the goods, Scarsdale orally agreed to pay Softa a total of $5,672.62. Softa immediately shipped the requested computerware to Scarsdale along with an invoice for the purchase price. At no time did Scarsdale dispute the amount of the invoice from Softa. From September of 1986 through April of 1988, a period of approximately 19 months, Scarsdale retained and used the goods. There is no evidence in the record to suggest that Scarsdale ever rejected or attempted to return the goods delivered.

In 1987, plaintiff filed suit to recover the purchase price. To date, no payment has been made by defendant on the goods. Defendant filed an answer, stating that the allegations of the complaint were factually inaccurate, but defendant did not entirely deny the veracity of the complaint. According to defendant, plaintiff agreed to furnish and install a computer program and computer retrieval system that would accurately maintain the accounting records and data required by defendant in its business operations. In connection therewith, plaintiff provided various computer hardware components and computer software programs in December 1985, April 1986 and September 1986, all of which were allegedly defective from their inception. Although Scarsdale has filed a counterclaim in the lower court action for breach of warranty based upon defects in these goods, that claim is not presently at issue before this court.

Plaintiff filed a motion for summary judgment for the amount of the purchase price of the computerware. In support thereof, plaintiff attached the affidavit of Softa's president, Robert Grosshandler, who stated that Softa shipped the requested computerware to Scarsdale as well as an invoice for the agreed-upon purchase price. Moreover, Grosshandler stated that Scarsdale had not paid any part of the purchase price. A copy of the invoice was also attached to the summary judgment motion.

In response to plaintiff's motion, defendant rested upon its answer and amended counterclaim, asserting that there existed genuine issues of material fact based upon defendant's prior claims that the delivered equipment was defective "almost from its inception." As supporting documentation, defendant attached copies of its answer and counterclaim. On January 2, 1991, the trial court entered summary judgment in favor of plaintiff but denied plaintiff's request for prejudgment interest.

On appeal, defendant initially asserts that the affidavit of Grosshandler, supporting plaintiff's summary judgment motion, was defective, as it did not comply with the requirements of Illinois Supreme Court Rule 191 (134 Ill. 2d R. 191) and section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005). To wit, the Grosshandler affidavit was not verified and contained no jurat.

■ Defendant did not challenge the sufficiency of the Grosshandler affidavit either in its response to plaintiff's summary judgment motion or at the hearing on the motion. An argument not raised in the trial court and presented for the first time on appeal is waived, even in an appeal from a summary judgment. (*R.J.N. Corp. v. Connelly Food Products, Inc.* (1988), 175 Ill. App. 3d 655, 529 N.E.2d 1184.) Hence, we need not examine the merits of this argument.

We next consider whether summary judgment was properly entered in favor of plaintiff. On appeal, defendant posits that its answer, amended counterclaim, answer to interrogatories and the affidavits of two Scarsdale employees presented genuine issues of material fact precluding summary judgment. However, in its brief on appeal, defendant fails to specifically delineate or describe these disputed factual issues. Moreover, in responding to plaintiff's motion for summary judgment, defendant merely attached copies of its answer and amended counterclaim to prove the existence of a genuine issue of material fact. While defendant attached affidavits to its subsequent motion for reconsideration, it presented no counteraffidavits in its response to plaintiff's summary judgment motion.

Where the movant in a summary judgment proceeding provides facts which, if uncontroverted, entitle the movant to judgment as a matter of law, the opponent of the motion cannot rely solely on its pleadings to raise issues of material fact. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 529 N.E.2d 552.) Although defendant attempted to create an issue of fact by presenting counteraffidavits in its motion for reconsideration, there was no apparent justification for defendant's delay in so doing. It is well settled that summary judgment will be affirmed on review where a party in opposition to the motion

had ample opportunity to obtain counteraffidavits but neglected to do so. See *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868; *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 531 N.E.2d 970; *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 510 N.E.2d 531.

Turning to the merits of plaintiff's motion, we must accept as true any facts contained in plaintiff's supporting affidavits, since defendant unjustifiably failed to file counteraffidavits in this case. The affidavit of plaintiff's president, Grosshandler, states that certain computer hardware components and software programs were delivered by plaintiff to defendant for an agreed-upon price of $5,672.62. An invoice for this amount was subsequently mailed to defendant in September 1986. Although defendant received and retained the aforesaid goods until April of 1988, defendant never remitted the purchase price of the goods to plaintiff.

■ In its answer, defendant admits to the receipt of the computerware from plaintiff as well as the agreed-upon contract price of the goods. However, defendant states in its answer that the goods were defective "almost from their inception." Defendant then asserts a counterclaim based upon a breach of warranty, but defendant fails to assert any affirmative defense to the underlying claim. In a summary judgment proceeding, a counterclaim is a separate action and will not defeat the original claim for the contract price. (See, *e.g., Samuels v. Chicago Housing Authority* (1990), 207 Ill. App. 3d 10, 565 N.E.2d 234; *Benckendorf v. Burlington Northern R.R.* (1983), 112 Ill. App. 3d 658, 445 N.E.2d 837.) Therefore, we need not consider defendant's counterclaim in evaluating the propriety of summary judgment in this case.

■ Under the Illinois Uniform Commercial Code (the Code), a buyer is required to pay the contract price for any goods accepted. (Ill. Rev. Stat. 1985, ch. 26, par. 2—607(1).) Acceptance is defined in section 2—606(1) of the Code, which reads:

"2—606. What Constitutes Acceptance of Goods. (1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(b) fails to make an effective rejection (subsection (1) of Section 2—602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an ac-

ceptance only if ratified by him." (Ill. Rev. Stat. 1985, ch. 26, par. 2—606(1).)

Section 2—602 further specifies that rejection of goods must be within a reasonable time after their delivery or tender. Moreover, a rejection is ineffective unless the buyer seasonably notifies the seller. Ill. Rev. Stat. 1985, ch. 26, par. 2—602.

▪ After thoroughly reviewing the record, we find no evidence of a seasonable notification to plaintiff of defendant's intent to reject the goods at issue. Not only did defendant fail to reject the goods, defendant retained and used the goods for a period of nearly 19 months. This would clearly fall within the confines of section 2—606(1)(c) of the Code as "any act inconsistent with the seller's ownership." These actions are also inconsistent with defendant's predominant argument in the trial court and on appeal that the delivered goods were "defective from their inception." If this were true, then defendant had no reason not to notify plaintiff of the alleged defects in the goods within a reasonable time after delivery. Defendant does not even attempt to argue that the alleged defects were latent or not easily discoverable upon inspection. Defendant's arguments are little more than *circulus in probando* and cannot be accepted by this court.

Based upon the totality of the circumstances presented, we find that defendant accepted the computerware delivered by plaintiff to defendant. In accordance with the laws of commerce of this State, we further find that summary judgment in the amount of $5,672.62 was properly entered in favor of plaintiff. Moreover, plaintiff is entitled to prejudgment interest at 5% *per annum* on the trial court's award. This purchase price amount was originally due plaintiff as of September 17, 1986. We therefore remand this cause to the trial court with instructions to calculate 5% simple annual interest on the amount of the award for the period of September 17, 1986, until the date of the judgment, January 2, 1991, pursuant to section 2 of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6402).

Affirmed and remanded with instructions.

RIZZI and CERDA, JJ., concur.