VICTOR K. JESPERSEN, d/b/a Trim-Line of Chicago and Trim-Line of Chicago, Inc., on Behalf of Himself and All Others Similarly Situated, Plaintiff-Appellant, v. MINNESOTA MINING AND MANUFACTURING COMPANY, Indiv. and as Survivor Corporation of Trim-Line, Inc., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—96—2349

Opinion filed May 30, 1997.—Rehearing denied July 2, 1997.

890

HOFFMAN, J., dissenting.

Kevin M. Forde and Mary Anne Mason, both of Kevin M. Forde, Ltd., and Richard William Austin and Michele E. Sibley, both of Pretzel & Stouffer, Chartered, and Keith L. Davidson, of Keith L. Davidson & Associates, all of Chicago, for appellant.

Richard C. Godfrey, J. Robert Robertson, and Andrew B. Bloomer, all of Kirkland & Ellis, of Chicago, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Victor R. Jespersen, doing business as Trim-Line of Chicago and Trim-Line of Chicago, Inc. (collectively Jespersen), on behalf of himself and other similarly situated distributors of Trim-Line products, filed a third amended class action complaint against defendants, the Minnesota Mining and Manufacturing Company (3M) and Trim-Line, Inc. (Trim-Line), alleging breach of contract. 3M filed a motion to dismiss the third amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), for failure to state a cause of action. The circuit court

granted 3M's motion to dismiss and entered judgment in favor of 3M and against Jespersen. Jespersen appeals.

On January 16, 1978, Jespersen entered into a sales distribution agreement with Trim-Line. Under the terms of this agreement, Jespersen was appointed the exclusive distributor of Trim-Line products in a specifically defined geographical area and was granted a license to use Trim-Line trademarks. Trim-Line manufactured, sold and installed automobile body trim, moldings, decorative designs, and other related parts and services. Trim-Line distributed its products and services, in part, through independent distributors such as Jespersen.

In the early 1980s, 3M purchased Trim-Line, which became a wholly owned subsidiary of 3M. On or about January 1, 1991, 3M implemented a plan to dissolve Trim-Line as a separate corporation and merged its business activity into 3M's Automotive Trades Division. On January 2, 1991, 3M sent its distributors, including Jespersen, a letter terminating the sales distribution agreement.

On December 28, 1994, Jespersen and two other terminated distributors filed a class action complaint against 3M and Trim-Line alleging various claims, including one for breach of an implied covenant of good faith and fair dealing. On June 29, 1995, the initial complaint was dismissed with leave to refile an amended complaint. On July 27, 1995, the first amended complaint was filed. That amended complaint was withdrawn, and a second amended complaint for breach of an implied covenant of good faith and fair dealing was filed on November 14, 1995. On December 26, 1995, the circuit court dismissed the second amended complaint in a written memorandum of opinion, and Jespersen was granted leave to amend the complaint. On January 23, 1996, Jespersen filed his third amended class action complaint for breach of contract. On February 22, 1996, 3M moved to dismiss Jespersen's third amended complaint under section 2—615 (735 ILCS 5/2—615 (West 1994)). On May 30, 1996, the circuit court granted 3M's motion and dismissed the third amended complaint in a written memorandum of opinion. Jespersen appeals the dismissal of his third amended complaint.

## OPINION

■ The standard of review on appeal from a section 2—615 motion to dismiss is whether the complaint sufficiently states a cause of action. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996). We do not consider the merits of the claim. *Saunders*, 278 Ill. App. 3d 307, 662 N.E.2d 602. All well-pleaded facts and reasonable inferences that could be drawn from those facts

are accepted as true (*Talber v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 638 N.E.2d 354 (1994)), but not conclusions of law or conclusions of fact unsupported by allegations of specific facts (*Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 574 N.E.2d 1316 (1991)). A complaint should not be dismissed under section 2—615 unless it clearly appears that no set of facts could be proved under the pleadings that would entitle the pleader to relief. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).

Jespersen's third amended complaint alleges five separate but related breaches of various provisions of the sales distribution agreement. Specifically, Jespersen alleges that (1) 3M breached section 4.01 by terminating the agreement without cause; (2) 3M breached section 2.01 by appointing 3M's Automotive Trades Division to sell Trim-Line products and services in the area of primary responsibility that had been previously assigned to Jespersen; (3) 3M breached section 3.01 by withholding from Jespersen 3M's acceptance of orders and failing to make full and timely delivery of products previously ordered; and (4) 3M breached sections 5.01 and 5.02 by failing to consult with Jespersen prior to terminating his area of primary responsibility and failing to consider the appropriate contractual factors, such as Jespersen's performance in his area, before the termination. However, the basis of the entire third amended complaint is that 3M could not terminate the distribution agreement except for cause as provided in section 4.01 of the agreement.

In granting 3M's motion to dismiss the third amended complaint, the circuit court found that (1) the sales distribution agreement expressly provided that it was to last indefinitely and was thus terminable at will as a matter of law, and (2) the agreement expressly granted 3M the right to cancel Jespersen's license to use the Trim-Line trade name upon request and, without a right to use the Trim-Line name, the sales distribution agreement has no effect.

On appeal, Jespersen contends that the circuit court erred in finding that the sales distribution agreement was terminable at will. Jespersen argues that examination of both sections 2.05 and 4.01 illustrates that the sales distribution agreement contained definite termination events which are provided in section 4.01 and expressly limited termination by 3M for cause only. Jespersen concludes that, since he did not violate any provision of section 4.01, 3M's termination of the sales distribution agreement was a breach of the agreement. We affirm the order of the circuit court.

Initially, we note that section 6.05 of the sales distribution agreement specifies that the interpretation of the agreement shall be construed under the laws of the State of California. Nevertheless,

both parties rely primarily upon Illinois law to support their respective positions. Because California law and Illinois law are consistent in holding that contracts of indeterminate duration are terminable at will by the parties (see *El Cajon v. Police Officers' Ass'n*, 49 Cal. App. 4th 64, 56 Cal. Rptr. 2d 723 (1996); *Ruca Hardware Ltd. v. Ruca Chien*, No. 94—C—3635 (N.D. Ill. 1995); *R.J.N. Corp. v. Connelly Food Products, Inc.*, 175 Ill. App. 3d 655, 529 N.E.2d 1184 (1988)), the determination of this matter is not altered.

■ Although it is well established that contracts of perpetual duration are terminable at will by the parties, a contract which nonetheless provides that it will terminate upon the occurrence of a specific event is not deemed perpetual in duration and is not terminable at will, but is terminable upon the occurrence of any of the conditions enunciated. *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1042 (N.D. Ill. 1994); *Ruca*, No. 94—C—3635.

■ The event upon which the contract will terminate must be an "objective event" so as to make the contract sufficiently definite in duration. *R.J.N. Corp.*, 175 Ill. App. 3d 655, 659, 529 N.E.2d 1184, 1187. "[I]f one of the parties could institute a termination-triggering event, then the contract should be considered terminable at will." *Yale Security, Inc. v. Freedman Sales, Ltd.*, No. 96—C—6501 (N.D. Ill. 1997), slip op. at 3.

■ In the present case, Jespersen could institute a termination-triggering event under sections 4.01 and 4.02. It is impossible to ascertain whether or when Jespersen would institute such an event; therefore, the agreement offered the possibility of perpetual duration and was terminable at will by the parties.

Section 2.05 provides:

> "*Term*. Unless terminated as hereinafter provided in Article IV, this agreement, and the appointment of the Distributor hereunder, shall continue in force indefinitely and govern all transactions between the parties."

Section 4.01 provides:

> "*Trim-Line's Right to Terminate*. Trim-Line, may, upon not less than thirty (30) days notice to Distributor, terminate this agreement for any of the following reasons:
>
> (a) Distributor's failure to reasonably promote Trim-Line's products in the area of primary responsibility, or demonstrated failure or inability to render adequate installation and related services.
>
> (b) Distributor's breach of any term or condition of the agreement.
>
> (c) Distributor's failure to make payment to Trim-Line within ninety (90) days of shipment or products ordered by Distributor.

(d) The bankruptcy or insolvency of Distributor.

(e) The sale, lease, rental, assignment or transfer whether for consideration or not of all or any part of Distributor's rights under the contract without the written approval and consent of Trim-Line."

Examination of sections 2.05 and 4.01 illustrates that the termination-triggering events enunciated therein did not create a definite durational term. Section 2.05 expressly provides that, unless the agreement is terminated as provided in article IV, the agreement shall continue in force indefinitely. Jespersen had complete control over whether or when he would institute a termination-triggering event under article IV, section 4.01. Inasmuch as the occurrence of a termination-triggering event under section 4.01 was within the complete control of Jespersen, it is impossible to determine whether or when Jespersen would institute a termination-triggering event. Consequently, a durational term cannot be ascertained from the sales distribution agreement. The events in section 4.01 cannot be considered objective events that would have had the effect of making the agreement sufficiently definite in duration. Rather, section 4.01 indicates an indefinite duration of the agreement based upon Jespersen's complete control over the occurrence of those events.

Furthermore, where one party has the option or decision to either comply with the contract or not, the duration of the contract is indefinite and terminable at will. *R.J.N.*, 175 Ill. App. 3d 655, 529 N.E.2d 1184. Section 4.02 provides:

"*Distributor's Right to Terminate.* Distributor may terminate this agreement upon thirty (30) days written notice to Trim-Line."

Jespersen had the option to either comply with the sales distribution agreement or not, based upon his ability to terminate the agreement under section 4.02. Thus, the sales distribution agreement would remain in effect only as long as Jespersen decided to comply with the agreement. Whether or when Jespersen would decide to no longer comply with the agreement and terminate the agreement under section 4.02 cannot be ascertained and, therefore, the agreement was indefinite in duration and terminable at will.

■ Jespersen next contends that the circuit court's reasoning, that because section 3.08(c) expressly granted 3M the right to cancel Jespersen's license to use the Trim-Line trade name upon request and that without a right to use the Trim-Line name the sales distribution agreement has no effect, is flawed and should be rejected by this court. Careful review of the record indicates that, in his response to 3M's motion to dismiss, Jespersen failed to address section 3.08(c) in the circuit court. An argument not raised in the circuit court in

response to a motion to dismiss and presented for the first time on appeal is waived. *Softa Group, Inc. v. Scarsdale Development*, 260 Ill. App. 3d 450, 632 N.E.2d 13 (1993); *In re M.K.*, 284 Ill. App. 3d 449, 672 N.E.2d 271 (1996). Hence, we need not examine the merits of this argument.

■ Jespersen further argues that the circuit court erred in holding that 3M's termination letter was sufficient notice under the agreement and by failing to consider the implied covenant of good faith and fair dealing. Although the circuit court dismissed two prior versions of Jespersen's complaint containing alleged breaches of the implied covenant of good faith and fair dealing, no appellate review of those earlier judgments is sought in this appeal. Jespersen's third amended complaint does not contain any allegation or claim that 3M's termination letter failed to give reasonable notice. Nor does the complaint contain any allegation concerning the implied covenant of good faith and fair dealing.

Moreover, Jespersen failed to raise these issues before the circuit court when addressing 3M's motion to dismiss the third amended complaint. As previously indicated, an argument not raised in the circuit court in response to a motion to dismiss and presented for the first time on appeal is waived. *Softa*, 260 Ill. App. 3d 450, 632 N.E.2d 13; *In re M.K.*, 284 Ill. App. 3d 449, 672 N.E.2d 271.

In addition, terminable-at-will contracts are generally held to permit termination for any reason, good cause or not, or for no cause at all. *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.*, 161 Ill. App. 3d 783, 515 N.E.2d 689 (1987). Mindful that every contract carries the duty of good faith and fair dealing, as a matter of law, absent express disavowal by the parties (*e.g., Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 985, 466 N.E.2d 958, 971, (1984)), the duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied that would be inconsistent with and destructive of the unfettered right to terminate at will. *Gordon v. Matthew Bender & Co.*, 562 F. Supp. 1286, 1289-90 (N.D. Ill. 1983).

Here, as the sales distribution agreement was indefinite, and thus terminable at will, it would be incongruous to say that an inference may be drawn that 3M impliedly agreed to an obligation that would be inconsistent with and destructive of its right to terminate the agreement at will. Accordingly, the order of the circuit court

dismissing Jespersen's third amended complaint for failure to state a cause of action was proper.

Affirmed.

HOURIHANE, J., concurs.

JUSTICE HOFFMAN, dissenting:

The majority acknowledges that a contract of indefinite duration is not deemed perpetual and terminable at will if the agreement provides for termination upon the occurrence of a specific "objective event," a proposition with which I agree. I dissent in this case, however, because I do not agree with the notion that a specified breach on the part of one party to a contract giving rise to the other party's right to terminate the agreement is not considered an "objective event" rendering the contract sufficiently definite in duration to remove it from the status of an agreement terminable at will.

Relying upon the holding in *R.J.N. Corp. v. Connelly Food Products, Inc.*, 175 Ill. App. 3d 655, 529 N.E.2d 1184 (1988), the majority holds that "where one party has the option or decision to either comply with the contract or not, the duration of the contract is indefinite and terminable at will." 288 Ill. App. 3d at 894. *R.J.N.* does not support such a broad proposition of law, and my research reveals no other reported Illinois case that does.

To be sure, *R.J.N.* holds that a contract provision providing for termination by one party when the other party elects to cease performing "cannot be construed as an 'objective event,' the occurrence of which terminates the contract thereby making it sufficiently definite in duration" so as to avoid being termed perpetual, and as a result, terminable at will. *R.J.N.*, 175 Ill. App. 3d at 660. When, however, a contract of indefinite duration is terminable upon the occurrence of some event, such as a future breach, neither party may terminate at will. *First Commodity Traders v. Heinhold Commodities*, 766 F.2d 1007 (7th Cir. 1985).

In this case, as the majority points out, section 4.01 of plaintiff Jespersen's sales distribution agreement with Trim-Line granted Trim-Line the right to terminate the contract upon, among other events, Jespersen's "breach of any term or condition of the agreement" or "failure to make payment to Trim-Line within ninety (90) days of shipment." These are cognizable events upon which termination may occur, and consequently, I believe that the subject contract is not perpetual and terminable at will, even in the absence of a specified termination date. See *Peters v. Health & Hospitals Govern-*

*ing Comm'n,* 91 Ill. App. 3d 1104, 1107, 415 N.E.2d 653 (1980), *rev'd on other grounds,* 88 Ill. 2d 316, 430 N.E.2d 1128 (1981); *First Commodity Traders,* 766 F.2d at 1012.