MID-WEST ENERGY CONSULTANTS, INC., Plaintiff-Appellant, v. COVENANT HOME, INC., d/b/a Covenant Village Northbrook, Defendant-Appellee.

First District (6th Division)   No. 1—03—1050

Opinion filed August 27, 2004.

Stephen D. Sharp, of Buffalo Grove, for appellant.

Hinshaw & Culbertson, L.L.P., of Chicago (Stephen R. Swofford and Samuel G. Levin, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Mid-West Energy Consultants, Inc. (Mid-West), appeals from the trial court's dismissal, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), of its second amended complaint against defendant, Covenant Home, Inc., d/b/a Covenant Village Northbrook (Covenant). We affirm.

## STANDARD OF REVIEW

Our standard of review of a trial court's dismissal based upon section 2—615 is *de novo. Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 516, 701 N.E.2d 99, 101 (1998). A section 2—615 motion attacks the legal sufficiency of a complaint, and this court's inquiry is limited to whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997). In order to withstand a motion to dismiss based on section 2—615, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548, 555-556 (1991). We must accept as true all well-pled factual allegations contained in the complaint and construe all reasonable inferences therefrom in favor of plaintiff. *Vernon*, 179 Ill. 2d at 341, 688 N.E.2d at 1174. But a plaintiff cannot rely simply on conclusions of law or fact unsupported by specific factual allegations. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408, 667 N.E.2d 1296, 1300 (1996).

## BACKGROUND

Mid-West provides consulting services for the recovery of past electrical overcharges and reduction of future utility bills. On December 2, 1993, Mid-West and Covenant entered into a written agreement (the Agreement) whereby Covenant agreed to pay Mid-West 50% of any refunds or credits that Covenant received from Commonwealth Edison (ComEd) and 50% of any future savings over a 36-month period that Covenant realized from recommendations made by Mid-West.

Mid-West reviewed and analyzed Covenant's past electric bills and ComEd's past 30-year electric billing and metering practices of

Covenant. Mid-West determined that ComEd had overbilled Covenant for electrical usage in an amount in excess of $4.7 million. On October 4, 1994, Mid-West and Covenant jointly presented to ComEd a summary of Covenant's claim, with supporting documentation, and demanded a refund in the form of a payment rather than a credit.

On July 24, 1995, ComEd formally responded to Covenant's demand. ComEd rejected all but $81,400 of the requested refund. In the ensuing months, ComEd further investigated and the parties further negotiated Covenant's claims. During this time, Mid-West acted on Covenant's behalf. Subsequent proposals prepared by Mid-West and negotiations with ComEd were unsuccessful. On or about July 3, 1996, ComEd slowed negotiations because it believed that "the parties were too far apart."

Shortly thereafter, Mid-West and Covenant interviewed a law firm to represent Covenant in its dispute with ComEd. In September 1996, Covenant retained a national law firm to assist in the prosecution of its claims against ComEd. Covenant and Mid-West agreed to share the costs of attorney fees, with Mid-West's contribution to be funded through the anticipated refund. After being retained, one of Covenant's attorneys advised it that Mid-West had previously been discredited before the Illinois Commerce Commission (ICC). The attorney further advised Covenant that, in light of the information it had been given, it would be in Covenant's best interest to terminate its relationship with Mid-West and retain a consultant paid on an hourly basis to assist in the prosecution of Covenant's claims against ComEd.

In or about September 1996, Covenant retained another energy consulting firm, Schedin Associates. Mid-West, unaware of the advice that had been given by the attorneys and the action taken by Covenant, continued to believe that Covenant was preparing to file its claims against ComEd and allegedly recommended and urged Covenant and Covenant's counsel, as a first step, to pursue an informal complaint before the ICC.

On January 21, 1997, Covenant and Mid-West had a meeting during which Covenant notified Mid-West that it had retained a different consultant, that Mid-West was terminated, and that Mid-West no longer had the authority to represent it with respect to its claim against ComEd. Specifically, Covenant's termination letter of that date stated that it would "serve as notification of the termination of the agreement between [Covenant and Mid-West]." The letter also stated: "It is our intention to continue providing the information to you so

that you can determine the 'savings' and calculate what is due to you through the 36-month period ending December, 1999."[1]

On March 19, 1997, Covenant wrote a clarifying letter regarding Mid-West's termination. In that letter, Covenant stated that it had no intention of sharing any refund it received from ComEd with Mid-West with regard to past usage because the relationship had been terminated and no refund had been received. Covenant ultimately never received a refund because, in May or June 1996, ComEd's counsel informed Covenant that it had failed to file a timely proceeding against ComEd before the ICC on or before October 4, 1996. Therefore, ComEd refused to offer any money in settlement.

On January 26, 2000, Mid-West filed its initial complaint seeking 50% of the refund received by Covenant from ComEd. After discovery revealed that ComEd had paid no refund, Mid-West filed a second amended complaint for breach of the covenant of good faith and fair dealing. Mid-West alleged that it had been deprived of the likely fruits of the Agreement as a result of Covenant's failure to independently investigate the claims of its counsel that Mid-West had been discredited before the ICC; Covenant's unilateral termination of the Agreement and its retention of another consultant "behind Mid-West's back"; Covenant's pursuing its claims against ComEd for many months after terminating the Agreement; and Covenant's failing to file a timely complaint with the ICC.

On March 5, 2003, the trial court dismissed the second amended complaint pursuant to section 2—615 for failing to state a claim for breach of the implied covenant of good faith and fair dealing. Mid-West filed this timely appeal.

■ "Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted." *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (1958). This good-faith principle is used only as a construction aid in determining the intent of the contracting parties. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 524, 675 N.E.2d 897, 903 (1996).

■ Mid-West argues that Covenant breached the implied covenant of good faith and fair dealing by replacing Mid-West with another consultant and terminating its agreement with Mid-West. The Agree-

---

[1]It is not disputed that Covenant complied with its contractual agreement to pay Mid-West for Covenant's future savings. That amount was $57,632.90.

ment did not contain any provision for its termination. A contract of indefinite duration such as the one here is not deemed perpetual and, thus, is terminable at will. *Jespersen v. Minnesota Mining & Manufacturing Co.*, 288 Ill. App. 3d 889, 681 N.E.2d 67 (1997), *aff'd*, 183 Ill. 2d 290, 700 N.E.2d 1014 (1998). Terminable-at-will contracts are generally held to permit termination for any reason. *Jespersen,* 288 Ill. App. 3d at 895, 681 N.E.2d at 71. "[T]he duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will." *Jespersen*, 288 Ill. App. 3d at 895, 681 N.E.2d at 71. Although Mid-West complains about its termination, there is nothing in the Agreement from which it could be inferred that Covenant was obligated to continue the retention of Mid-West for any period. The Agreement did not contain any provision under which Mid-West could be discharged, nor detail any procedure requiring formal notice, written admonitions, or any other requirement before the relationship could be terminated.

Moreover, it is undisputed that Covenant terminated the Agreement on the advice of its counsel. Mid-West alleges that the information provided by the attorney concerning Mid-West was false. Mid-West has not alleged, however, that Covenant had any knowledge or reason to believe that the information was false. Mid-West has failed to allege any facts showing bad faith or improper motive. With respect to Mid-West's assertions that Covenant breached its good-faith obligations to Mid-West by failing to investigate the accuracy of its counsel's advice, Mid-West has not advanced any argument or cited any authority that a party has a duty to inquire into information received from his or her attorney. As Judge Learned Hand pointed out, "in commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves." *James Baird Co. v. Gimbel Brothers, Inc.*, 64 F.2d 344, 346 (2d Cir. 1933). Parties to a contract are not each other's fiduciaries. *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). Even where a contract expressly states that a party agrees to use its "best efforts" on behalf of the other, which is not the case here, that party is not required to ignore its own interests. *Grant v. Board of Education of the City of Chicago*, 282 Ill. App. 3d 1011, 1025-26, 668 N.E.2d 1188, 1197 (1996). As Covenant notes, reliance on the advice of counsel is the antithesis of bad faith or wrongful motive. In any event, we need not determine whether Covenant had good cause to terminate the Agreement because cause was not even required in this terminable-at-will contract.

■ Mid-West also complains that Covenant breached the implied covenant of good faith and fair dealing in the Agreement by failing to file a complaint before the ICC. Yet nothing in the language of the contract states or implies that Covenant would be required to file or prosecute any claim against ComEd, or incur the attendant cost and commitment of time that such a filing might necessarily entail against ComEd. When a contract is clear and unambiguous, a court will not add terms in order to reach a result more equitable to one of the parties. *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925, 554 N.E.2d 511, 514 (1990). Although a court can declare an implied covenant to exist, that is only where there is in the express contract of the parties a satisfactory basis which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties making the contract. *O'Fallon Development Co. v. Reinbold*, 69 Ill. App. 2d 169, 177, 216 N.E.2d 9, 13 (1966). Between 1993 and 1996, settlement negotiations took place between ComEd and Covenant. Mid-West has not alleged that Covenant was not cooperative; yet the negotiations were fruitless. Nothing in the Agreement, however, shows that it was clearly in the contemplation of the parties that a complaint would have to be filed before the ICC in order to effect the purposes of the contract.

Mid-West contends, however, that filing an informal claim before the ICC was a matter within the sole discretion of Covenant. Illinois courts have recognized that a party who does not properly exercise contractual discretion breaches the implied covenant of good faith and fair dealing that is in every contract. See, *e.g.*, *Diamond v. United Food & Commercial Workers Union Local 881*, 329 Ill. App. 3d 519, 527, 768 N.E.2d 865, 971 (2002). Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 112, 618 N.E.2d 418, 424 (1993). In order to plead a breach of the covenant of good faith and fair dealing, a plaintiff must plead existence of contractual discretion. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367-68, 657 N.E.2d 1095 (1995). Nevertheless, the good-faith duty to exercise contractual discretion reasonably does not apply where no contractual discretion exists. *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1060, 723 N.E.2d 755, 764 (1999). Nothing in the Agreement obligated Covenant to file a claim before the ICC in order to effect the purposes of the contract. In the instant case, the contract did not vest

the type of discretion in Covenant required to support a cause of action for breach of the implied covenant of good faith and fair dealing.

As Covenant additionally points out, other than avoiding additional attorney or consulting fees, Covenant did not profit in any way from not filing a claim. The implied covenant of good faith and fair dealing does not require a party with discretion to forbear from exercising its right to terminate a contract for the benefit of the other party to the agreement. Parties are entitled to enforce the terms of their negotiated contracts to the letter without being mulcted for lack of good faith. *Resolution Trust Corp.*, 248 Ill. App. 3d at 113, 618 N.E.2d at 424.

Mid-West has raised a claim for *quantum meruit*, for the first time on appeal, which Covenant asserts has been waived. The waiver rule is a limitation on the parties and not on the court. *In re D.F.*, 208 Ill. 2d 223, 238, 802 N.E.2d 800, 809-810 (2003). Thus, we shall address Mid-West's argument.

Mid-West's *quantum meruit* claim fails. When a contract exists between the parties, no quasi-contractual claim, such as *quantum meruit*, can arise. *Installco, Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 781, 784 N.E.2d 312, 318 (2002), quoting *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 643 N.E.2d 245 (1994).

In accordance with the foregoing, we affirm the judgment of the circuit court of Cook County dismissing, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), Mid-West's second amended complaint with prejudice.

Affirmed.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.