2022 IL App (1st) 210360-U

Nos. 1-21-0360 & 1-21-0778 (cons.)

Order filed March 31, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PAUL FISHER and JEFF FISHER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 3268 |
| | ) | |
| GARAGE 2017 LLC, n/k/a Danley's Garage World LLC, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendant-Appellant. | ) | Judge, presiding. |

| | | |
|---|---|---|
| GARAGE 2017 LLC, n/k/a Danley's Garage World LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 2095 |
| DGW LEGACY, INC., f/k/a Danley Lumber Company, | ) | |
| JEFF FISHER, and PAUL FISHER, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) On cross-motions for summary judgment, in a case involving the purchase and sale of a company where the sellers alleged the buyer breached the parties' consulting agreements, the sellers were entitled to summary judgment against the buyer because the buyer was obligated to pay the consultant fees to the sellers since no fee termination event had occurred.

(2) The trial court properly dismissed with prejudice the buyer's complaint against the sellers for breach of contract, fraud and unjust enrichment because those claims were dismissed under the terms of the parties' prior settlement agreement in another matter.

¶ 2    Appellant Garage 2017 LLC, n/k/a Danley's Garage World LLC, (Garage World) appeals the judgments of the trial court in two cases.

¶ 3    In the first case, where the appellees Paul and Jeff Fisher sued Garage World for breach of two consulting agreements, the trial court addressed the parties' cross-motions for summary judgment and granted summary judgment in favor of the Fishers and against Garage World.

¶ 4    On appeal, Garage World argues that summary judgment against it and in favor of the Fishers was error because the Fishers, as a matter of law, committed a "fee termination event" under the terms of the consulting agreements and, thus, Garage World did not breach the agreements when it declared a termination event and stopped paying the Fishers' consulting fees.

¶ 5    In the second case, where Garage World sued the Fishers and their company, DGW Legacy, Inc., f/k/a Danley Lumber Company (DGW) for breach of contract, fraud and unjust enrichment regarding Garage World's purchase of Danley Lumber Company, the trial court granted the Fishers' and DGW's motion to dismiss with prejudice, ruling that Garage World's complaint was barred by the terms of a prior settlement agreement in another matter.

¶ 6    On appeal, Garage World argues that dismissal of its complaint was error because it was not barred by the terms of a settlement agreement where the claims were unknown by Garage World, the general and ambiguous settlement agreement should be construed under the good-faith principle, releases should not be used as instruments of fraud or oppression, and a material question of whether the release was obtained by fraud overcomes the presumption that the release is valid on its face.

¶ 7    These two cases were consolidated on appeal. For the reasons that follow, we affirm the judgments of the circuit court.[1]

¶ 8                                I. BACKGROUND

¶ 9    Paul and Jeff Fisher owned Danley Lumber Company, a garage company in Chicago. In January 2017, they entered into a purchase and sale agreement (PSA) to sell the assets of the company to Garage World for $8.4 million. Garage World agreed to pay certain amounts upon execution of the agreement, other amounts that were due as earn-out payments, and $700,000 per year in consulting fees to the Fishers for a period of five years. Specifically, Garage World signed two consulting agreements, one applicable to Paul and the other applicable to Jeff, which had identical terms and required Garage World to make monthly payments in the amount of $29,166.66 to each of the Fishers for a period of five years beginning in February 2017. Furthermore, Garage World's owner, Doug Cook, personally guaranteed payment of the monthly consulting fees for a period of 24 months starting in February 2017.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 10    Garage World could terminate the consulting fees only upon the occurrence of a "fee termination event," as that term was defined in the consulting agreements. Relevant to this appeal, a "fee termination event" included only the following:

"(i) Consultant's gross negligence or willful misconduct in the performance of the Services [as described in the consulting agreements];

* * *; and

(vi) Consultant shall have failed to disclose to the Company any material conflict of interest with the Company Parties that causes significant harm to the Company."

As described in the consulting agreements, the Services the Fishers were required to perform essentially required them to assist Garage World during the transition and otherwise respond to reasonable requests from the company. The Fishers formed DGW to facilitate the sale.

¶ 11    Three separate litigations arose from this purchase and sale transaction. The first involved the earn-out payments. The second involved Garage World's nonpayment of the Fishers' consulting fees. And the third involved the Fishers' and DGW's alleged breach of contract, fraud and unjust enrichment regarding Garage World's purchase of Danley Lumber Company.

¶ 12    In December 2017, DGW filed a complaint against Garage World for breach of their PSA, alleging Garage World failed to make the requisite earn-out payments. Garage World filed a counterclaim for a declaratory judgment. On April 10, 2018, the parties entered into a mutual release and settlement agreement whereby they resolved the claims in that litigation and agreed to certain releases.

¶ 13    In March 2019, Garage World delivered correspondence to both Paul and Jeff Fisher claiming that "a Fee Termination Event has occurred" based upon their "failure to provide services in good faith and with [Garage World's] best interest in mind." The timing of the fee termination notices coincided with the end of Doug Cook's personal guaranty to pay the fees for 24 months. Those notices, however, did not specify which fee termination event(s) Garage World was invoking to terminate the consulting payments.

¶ 14    In March 2019, the Fishers sued Garage World for breach of the consulting agreements, which suit would eventually become appeal No. 1-21-0360 (the 2019 case). Specifically, the Fishers alleged that (1) they each entered into a consulting agreement with Garage World requiring it to make monthly payments to them of $29,166.66 for five years beginning in February 2017, (2) in March 2019, Garage World asserted that a "fee termination event" occurred, which relieved it of the obligation to continue to make payments under the consulting agreements, and (3) a fee termination event did not occur and Garage World's cessation of monthly payments constituted a breach of contract.

¶ 15    Eventually, the Fishers moved for summary judgment, arguing that Garage World terminated the consulting agreements without the occurrence of a fee termination event. The Fishers argued that defendant's contention of the existence of a fee termination event involved alleged conduct that either occurred before the parties executed the agreements at issue, or was contradicted by defendant's own testimony, unsupported by any evidence, not a fee termination event or barred by the parties' settlement agreement. The Fishers also argued that no genuine issue of material fact existed regarding their damages based on their unpaid consulting fees.

¶ 16    Garage World filed a cross-motion for summary judgment, arguing that many fee termination events occurred from April 20, 2018, through February 26, 2019, and gave rise to Garage World's proper termination of the consulting agreements. Garage World also argued that the Fishers' reliance on the 2018 settlement agreement was unwarranted because it was not enforceable, or, in the alternative, many of the fee termination events relied on by Garage World occurred after the effective date of the settlement agreement.

¶ 17    On March 17, 2021, the trial court granted in part and denied in part the Fishers' summary judgment motion, denied Garage World's cross-motion for summary judgment, and entered judgments in favor of Paul and Jeff Fisher and against Garage World in the amount of $1,020,833.10 each. Those amounts constituted the remaining payments owed on the consulting agreements to the Fishers. The trial court found that Garage World did not establish that a fee termination event occurred and thus had no cause to stop making the monthly consulting fee payments.

¶ 18    Meanwhile, in February 2021, Garage World sued the Fishers and DGW (the 2021 case), alleging they breached the PSA, committed fraud by failing to obtain building permits for garages built from 2012 through 2016, and were unjustly enriched with respect to the PSA. Specifically, Garage World alleged the Fishers and DGW breached the parties' 2017 PSA by failing to comply with its terms and made false statements of material fact relating to the agreement. Garage World further alleged that the parties' 2018 mutual release and settlement agreement did not bar Garage World's claims. This case eventually would become appeal No. 1-21-0778.

¶ 19    The Fishers and DGW filed a motion to dismiss under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)), on the grounds that the release in the parties' 2018 settlement agreement barred Garage World's claims.

¶ 20    On June 30, 2021, the trial court dismissed Garage World's complaint with prejudice, ruling that the release in the parties' 2018 settlement agreement barred the claims. The trial court stated that the settlement agreement contained a specific release because sections 3.1, 3.2, 3.3 and 3.4 of the agreement specifically provided that the release included claims relating to the PSA.

¶ 21    Garage World appealed the trial court's March 17 and June 30, 2021 judgments.

¶ 22                                    II. ANALYSIS

¶ 23                    A. The 2019 Case: Breach of Consulting Agreements

¶ 24    Garage World argues that summary judgment against it and in favor of the Fishers was error because the Fishers committed a fee termination event, which constituted grounds for Garage World to terminate the monthly payments due to the Fishers under the consulting agreements. Garage World also argues that the award of summary judgment in the 2019 case was premature because Garage World was attempting to consolidate the 2019 and 2021 cases. Furthermore, Garage World argues the amount of the judgment awarded to the Fishers is a mathematical error. In addition, Garage World argues that the implied duty of good faith voided the consulting agreements.

¶ 25                                    1. Summary Judgment

¶ 26    Summary judgment is proper when the pleadings, depositions, admissions, and affidavits, construed strictly against the movant and liberally in favor of the nonmovant, show that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Illinois State Bar Association Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. Summary judgment is a drastic measure and should be granted only when the movant's right to judgment is clear and free from doubt. *Adams*, 211 Ill. 2d at 42-43. Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. *Id.*

¶ 27   A party moving for summary judgment, may prevail by either (1) affirmatively disproving the nonmovant's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law; or (2) establishing that the nonmovant lacks sufficient evidence to prove an essential element of the nonmovant's cause of action. *Carolan v. City of Chicago*, 2018 IL App (1st) 170205, ¶ 11. Once the movant satisfies the initial burden of production, the burden then shifts to the nonmovant to present a competent factual basis that would arguably entitle the nonmovant to a judgment under the applicable law. *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 6. The nonmovant cannot rest on his pleading if the movant has supplied uncontradicted facts that would warrant judgment for the movant. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004); *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20. If the nonmovant cannot produce facts that establish each element of his cause of action, summary judgment for the movant is proper. *Freedberg v. Ohio National Insurance Company*, 2012 IL App (1st) 110938, ¶¶ 25-26.

¶ 28 In opposing a summary judgment motion, the nonmovant must present facts, not unsupported conclusions, speculation, conjecture, guess, or opinions, which are all insufficient to withstand summary judgment. *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 39. The facts presented by the nonmovant in opposition to a motion for summary judgment must be competent facts under the applicable law. *Wiszowaty v. Baumgard*, 257 Ill. App. 3d 812, 819 (1994). Any evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996); *Zamora v. Lewis*, 2019 IL App (1st) 181642, ¶ 67.

¶ 29 Where, as here, the parties have filed cross-motions for summary judgment, they have conceded that there are no genuine issues of material fact and have agreed that only questions of law are involved. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. In such a situation, the parties request that the court decide the issues as a matter of law. *Id.* However, the mere filing of cross-motions does not preclude a determination that triable questions of material fact exist. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993). Partial summary judgment may be granted whenever there is no material factual dispute as to any major issue in a case, even if substantial controversy exists with respect to other issues. *Gleicher, Friberg & Associates, M.D., S.C. v. University of Health Sciences, Chicago Medical School*, 224 Ill. App. 3d 77, 87 (1991). We review *de novo* the trial court's judgment on cross-motions for summary judgment. *Pobuda*, 2014 IL 116717, ¶ 24; see also *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis a trial judge would perform).

¶ 30                    2. Occurrence of Fee Termination Event(s)

¶ 31    Garage World argues that the Fishers were not entitled to summary judgment on the parties' cross-motions because the Fishers committed a fee termination event, which constituted grounds for Garage World to terminate the $29,166.66 monthly payments due to the Fishers under the consulting agreements before the five-year payment period elapsed. Moreover, Garage World does not argue that a specific instance constituted a fee termination event. Instead, Garage World argues that several issues or events constituted a pattern of conduct that must be evaluated as a whole to conclude that a termination event occurred.

¶ 32    To support their claim that a termination event occurred, Garage World makes broad pronouncements of alleged misconduct by the Fishers without always specifying who allegedly breached a consulting agreement and how it was breached. Accordingly, Garage World's argument fails to acknowledge that there are two separate consulting agreements, one executed by Jeff Fisher and the other by Paul Fisher, and the conduct of one has no effect on the other's agreement. Garage World terminated both consulting agreements on the exact same day, indicating that both Paul and Jeff independently committed a fee termination event at the exact same time and coincidentally the same exact month the personal guaranty of Doug Cook expired.

¶ 33    This matter requires this court to construe the parties' contracts to determine whether Garage World's allegations of misconduct by the Fishers constituted a fee termination event. The basic rules of contract interpretation are well settled. In construing a contract, the primary objective is to give effect to the intention of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). A court will first look to the language of the contract itself to determine the parties' intent. *Id*. at

233. A contract must be construed as a whole, viewing each provision in light of the other provisions. *Id.* The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract. *Id.*

¶ 34    If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). However, if the language of the contract is susceptible to more than one meaning, it is ambiguous. *Gallagher*, 226 Ill. 2d at 233. If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent. *Id.*

¶ 35    Before the trial court, Garage World argued that the fee termination events consisted of conduct or an omission whereby the Fishers "fail[ed] to provide services in good faith and with the Company's best interests in mind," apparently invoking the following two of the six fee termination events listed in the consulting agreements:

"(i) Consultant's gross negligence or willful misconduct in the performance of the Services [as described in the consulting agreements];

* * *; and

(vi) Consultant shall have failed to disclose to the Company any material conflict of interest with the Company Parties that causes significant harm to the Company."

¶ 36    According to the plain language of the contract, to establish a fee termination event (i), Garage World must present a competent factual basis that would arguably show that the conduct (1) was "in the performance of the Services," and (2) constituted gross negligence or willful misconduct. Generally, the Services described in the consulting agreements, as set forth below,

required the Fishers to aid in the transition, provide advice and input in good faith, and respond to specific requests by Garage World. "Gross negligence" is a severe degree of negligence taken as reckless disregard, such as a blatant indifference to one's legal duty or other's rights. See Black's Law Dictionary (Online ed. 2022). "Reckless disregard" is "[c]onscious indifference to the consequences of an act." *Id.* "Willful Conduct" means a course of action that is actual or deliberate or shows an utter indifference to or conscious disregard for others. See Illinois Pattern Jury Instructions, Civil, No. 14.01 (Online ed. 2022).

¶ 37    To show a fee termination event (vi), Garage World must present a competent factual basis that would arguably show that a nondisclosure by the Fishers of a material conflict of interest caused significant harm to Garage World.

¶ 38    According to the consulting agreements, the "Services" the Fishers were required to perform as consultants required them to use their reasonable best efforts to:

●  "continue to perform such duties as were performed by Consultant prior to the Effective Date until the earlier of (a) the six month anniversary of the Effective Date or (b) such time as, in the reasonable good faith determination of the Company, such duties have been successfully transitioned to new personnel;

●  provide advice and input to the Company and its management in good faith and with the Company's best interests in mind in an effort to:

- prevent any disruptions in the Company's business; and

- grow the Company's business, whether through sales, brand awareness, customer service or otherwise;

- meet with the Board of Directors of the Company and management of the Company, as reasonably requested by the Company, to discuss

  - strategic meetings and planning related to business development of the Company;

  - merger and acquisition targets (each, a "Target");

  - integration of any Target actually acquired with the Company's business;

  - exploring other potential investments into the business for non-acquisitive related growth opportunities;

  - customer acquisition, retention, satisfaction and communication; and

  - any other matters related to the Company Parties as reasonably requested by the Company Parties;

- as reasonably requested by the Company, assist the management team with respect to key customer issues where Consultant has key relationship(s); and

- provide periodic updates to the Company, as reasonably requested by the Company from time to time, as to progress with respect to any of the foregoing or other projects being conducted by Consultant.

All Services shall be of the type performed by strategic consultants to senior management, and all requests by the Company for Services shall be made by the Board of

Directors or Chief Executive Officer of the Company or such other senior officer as may be agreed to by the Parties."

¶ 39    Our review of the events cited by Garage World on appeal establishes, as found by the trial court, that none constituted a fee termination event. First, Garage World cited *Wriddley v. Danley's Lumber Company*, a 2016 lawsuit against Danley Lumber Company prior to the January 2017 sale, which was disclosed to Garage World, wherein a default judgment was entered against Danley Lumber Company. Garage World alleges that the Fishers did not pay the judgment, did not disclose that nonpayment, and Wriddley served a citation to discover assets on Garage World.

¶ 40    Applying the appropriate analysis, this conduct did not constitute a fee termination event. Event (vi) does not apply because Garage World admitted that the Fishers disclosed the lawsuit. Event (i) also does not apply because the *Wriddley* lawsuit was not in the performance of the Services, did not constitute a transition of the Fishers' duties, was not advice and input to the company, and there was no request to either meet with the board of directors, assist the management team, or provide a periodic update with respect to the lawsuit. Further, even if the Fishers had a duty with respect to the lawsuit, their conduct in failing to pay was not gross negligence or willful misconduct. They had hired an attorney to handle the suit and were unaware of any default judgment. There was no evidence of any purposeful conduct or intent to harm, and Garage World's mere receipt of a citation to discover assets could not have caused significant or real harm to the company. We conclude that a presale lawsuit that turned into a judgment against the Fishers was not a fee termination event.

¶ 41    Second, Garage World asserted that it found an inappropriate email involving nudity sent from Jeff Fisher's company email. This conduct does not fall within any of the Services listed in the consulting agreements and cannot be the basis for a fee termination event. Moreover, a single personal viewing or sending of inappropriate material on the part of a consultant does not constitute gross negligence or willful misconduct. In addition, the email was sent on February 9, 2017, well before the execution of the 2018 settlement agreement and thus would have been released by the express terms of the settlement agreement even if the conduct somehow constituted a fee termination event.

¶ 42    Third, Garage World cited *Jastrzab v. Danley's Lumber Company*, a lawsuit wherein a preacquisition customer sued the Fishers' presale entity after the January 2017 sale to Garage World. Garage World alleged the Fishers refused to deal with the matter, but the Fishers specifically testified in their depositions that they had engaged an attorney to represent Danley Lumber Company in that lawsuit and advised Garage World of the lawsuit. Moreover, the lawsuit was settled, including the claims against Garage World. There is no evidence of any relation to the Services under the consulting agreements, or gross negligence or willful misconduct relating to this issue. Furthermore, Garage World failed to raise this issue before the trial court and thus has forfeited review of this issue. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 457 (2004).

¶ 43    Fourth, Garage World cited *Tuff Garages Services Company v. Garage 2017, LLC*, a lawsuit by a former salesman of Danley Lumber Company for unpaid commissions on certain jobs where all or a majority of the unpaid commissions were due after the January 31, 2017 acquisition. All or most of the few jobs for which the former salesman sought commissions that dated prior to

January 31, 2017, likely had concluded and become due after January 2017, and those jobs were clearly paid for because the former salesman received three payments in 2017. This issue has nothing to do with the Services described in the consulting agreements, and Garage World does not claim any failure to disclose the lawsuit.

¶ 44    Fifth, Garage World cited *Jones v. Danley's Lumber Company*, a claim brought before the Illinois Human Rights Commission (IHRC) in 2018 against the Fishers' presale entity. Garage World generally alleged and provided documents showing that during the IHRC proceedings the Fishers' lawyer indicated they had made their last settlement proposal and would not participate in a settlement conference. The IHRC thereby returned the case to the trial calendar. This matter did not relate to the Services under the consulting agreements, did not constitute gross negligence and did not cause significant harm to Garage World. Moreover, Paul Fisher expressly testified, without any contrary evidence from Garage World, that the matter was disclosed to Garage World, settled and dismissed.

¶ 45    Sixth, Garage World argued that the Fishers' failure to change their mailing address constituted a fee termination event. This matter was not part of the Services under the consulting agreements and did not constitute gross negligence or willful misconduct or a failure to perform the services in all material respects.

¶ 46    Seventh, Garage World argued that the Fishers' nonpayment of a Yellowbook invoice in the amount of $7883 constituted gross negligence or willful misconduct in the performance of the Services and justified termination of the consulting agreements. Under the parties' 2018 settlement agreement, DGW "agreed that the Unpaid Yellowbook Invoices shall be the responsibility of

DGW." Garage World improperly conflates the consulting agreements with the settlement agreement. Those are separate agreements, and even if DGW breached the settlement agreement, such conduct did not affect the consulting agreements. Rather, the alleged conduct must in itself constitute a fee termination event, which it did not because it did not constitute gross negligence or willful misconduct in the performance of the Services.

¶ 47 Because the matters cited by Garage World did not constitute a fee termination event, either individually or jointly, they do not support Garage World's decision to terminate the consulting payments.

¶ 48                                         3. Premature Ruling

¶ 49 Next, Garage World claims that because it filed its new complaint against the Fishers and DGW in the 2021 case a few days before the filing of the final summary judgment pleading in the 2019 case, the trial court's ruling on the cross-motions for summary judgment in the 2019 case was premature. Garage World fails to cite any relevant authority or make a cogent argument to support this claim. "The reviewing court is entitled to have the issues clearly defined with pertinent authorities cited and a cohesive legal argument presented. The appellate court is not simply a depository in which the appealing party may dump the burden of argument and research." *Williams v. Danley Lumber Company*, 129 Ill. App. 3d 325 (1984). A party forfeits review of any issue that has not been sufficiently or properly presented to this court for review. *Id.* Furthermore, our review of the record establishes that Garage World did not make any motion in the 2019 case to continue or stay the ruling on the parties' cross-motions for summary judgment.

¶ 50    We conclude that there was no basis for the trial court to not rule on the cross-motions for summary judgment.

¶ 51                                4. Judgment Amount

¶ 52    Next, Garage World asks this court to correct a "mathematical error." The purported error is the trial court's grant of the full amount of consulting payments owed to the Fishers even though, had Garage World complied with the consulting agreements, not all payments were yet due. This is not a mathematical error.

¶ 53    Rather, the Fishers expressly stated in their motion for summary judgment that 34 payments were due at $29,166.66 for a total of $991,666.44. The Fishers corrected that amount at oral argument on the motion to 35 payments due (again not a mathematical error), and Garage World posed no objection. There was no error or confusion about the amounts sought by the Fishers or that part of that amount was, pursuant to consulting agreements, due after the entry of judgment. Moreover, Garage World never raised the mathematical error argument, never raised any acceleration argument, and never raised any argument as to the amount sought and granted either in its cross-motion for summary judgment and response to the Fishers' motion for summary judgment, its reply in support of the cross-motion, or at oral argument during the hearing on the cross-motions. We conclude that Garage World has forfeited review of this claim. *Tirapelli*, 351 Ill. App. 3d at 457.

¶ 54                                5. Implied Duty of Good Faith

¶ 55    Finally, Garage World argues that this court should use the duty of good faith and fair dealing, which is implied in every contract, to construe the parties' intent regarding the consulting

agreements and assume that all the parties entered into the consulting agreements with pure motives. The good faith principle informs and aids the court in interpreting a contract, *e.g.*, determining a party's obligations when there is contractual discretion. *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165 (2004). This issue, however, is not present in this case. Furthermore, Garage World never raised this issue in the trial court and has forfeited its right to do so on appeal. *Id.*

¶ 56                              B. The 2021 Case: Release and Settlement Agreement

¶ 57    In the 2021 case, Garage World sued the Fishers and DGW for breach of contract, fraud and unjust enrichment, based on allegations that they failed to obtain building permits for garages built from 2012 through 2016. The trial judge dismissed this complaint with prejudice, holding that it was barred by the settlement agreement entered into by the parties in 2018. On appeal, Garage World argues that dismissal of its complaint was error because it was not barred by the terms of the settlement agreement where the claims were unknown by Garage World, the general and ambiguous settlement agreement should be construed under the good-faith principle, releases should not be used as instruments of fraud or oppression, and a material question of whether the release was obtained by fraud overcomes the presumption that the release is valid on its face.

¶ 58                                      1. Section 2-619 Dismissal

¶ 59    A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency of a claim but asserts an affirmative matter that defeats the claim. *Doe v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009). Sections 2-619(a)(1) through (a)(9) provide a list of such affirmative matters. 735 ILCS 5/2-619(a)(1)-(9) (West 2020). Relevant here, section 2-619(a)(6) allows for the

involuntary dismissal of a claim when "the claim set forth in the plaintiff's pleading has been released." 735 ILCS 5/2-619(a)(6) (West 2020). All facts in the pleadings, depositions, and affidavits found in the record may be considered upon review. *Doe*, 234 Ill. 2d at 396. Pleadings and supporting documents must be interpreted by the court in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). If a defendant satisfies its initial burden of presenting an affirmative matter defeating a plaintiff's complaint, the burden then shifts to the plaintiff to show that the asserted defense is unfounded or leaves unresolved issues of material fact as to an essential element. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). We review a motion to dismiss brought pursuant to section 2-619 of the Code *de novo*. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

¶ 60                                    2. The Release

¶ 61    The parties' 2018 settlement agreement, which contains a release of various claims between the parties, was entered into approximately one and a half years after the execution of the PSA. Relevant to this appeal, the settlement agreement included the following provisions:

> "3.1 <u>'Claims' Defined</u>. As used in this Agreement, the term 'Claims' shall mean *any and all manner and kind of claims*, *** *known or unknown*, suspected or unsuspected, *** whether based in *contract, equity,* tort, negligence, intentional tort, strict liability, express warranty, implied warranty, *fraud*, consumer fraud, criminal law, by statute, other legal or equitable theory of any kind, *which arise out of or are related to facts or events that occurred prior to the Effective Date of this Agreement including, but not limited to,*

*the PSA*, the Bill of Sale Agreement, the Escrow Agreement, the Purchase Price Adjustment Settlement, *** the Yellowbook Invoices or the Consulting Agreements ***.

3.2 'Release' Defined. As used in this Agreement, the term 'Release' shall mean the full, final, complete, absolute and unconditional release, waiver, discharge, acquittal, relinquishment, forfeiture and forgiveness of any and all Claims.

3.3 Mutual Release. Except with respect to obligations created by or arising out of this Agreement, in consideration for the promises contained in this Agreement, the Parties agree to release one another of all Claims, as that term is defined. For the avoidance of doubt, each party hereto hereby acknowledges and agrees that no amounts shall be due or payable under any circumstance pursuant to Section 4 of the PSA, and that this Agreement is an express modification of the PSA.

3.4 Scope of Release. The Mutual Release of Claims given in Section 3.3 above: (a) includes, incorporates, extends to and inures to the benefit of the Parties' respective principals, employees, agents, attorneys, partners, ***, and any other related persons or entities whose Claims may arise by or through them; (b) extends to Claims both known and unknown, absolute or contingent, choate and inchoate, direct and derivative; (c) is a full, complete, absolute, unconditional, and final waiver and discharge of Claims; (d) extends to Claims arising out of or attributable to events or circumstances occurring at any time prior to the Effective Date of this Agreement; and (e) is to be interpreted in the broadest possible manner." (Emphasis added.)

The trial court ruled the foregoing language constituted a specific release and barred Garage World's causes of action.

¶ 62    When reviewing a release, we apply contract law principles because a release is a contract. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). Our primary objective, therefore, is to give effect to the parties' intent. *Gallagher*, 226 Ill. 2d at 232. "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id*. at 233. We will construe the whole contract at issue, and we will not determine the intent of the parties from isolated provisions standing alone. *Id*. Clear and explicit written agreements that are unambiguous will be enforced as written without the assistance of extrinsic or parol evidence. *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984). We will only resort to extrinsic evidence to determine the parties' intent where a contract is susceptible to more than one meaning. *Gallagher*, 226 Ill. 2d at 233. A self-induced or unilateral mistake is not a valid reason to set aside an unambiguous release. *Rakowski*, 104 Ill. 2d at 324.

¶ 63    Releases can be general or specific. *Goodman v. Hanson*, 408 Ill. App. 3d 285, 293, 295 (2011). General release language, *i.e.*, broad language not referring to any specific claims and facts, does not release claims that are unknown to the releasor. *Id*. Garage World alleged in its complaint that the permit issue was unknown to it, so a general release would not bar Garage World's claims based on the permit issue.

¶ 64    A specific release is one that contains the claim at issue within the release agreement, or where the claim falls within the clear scope of the release. *Id*. A release is specific if it makes clear

on its face what claims were within the contemplation of the parties at the time the release was given, and parol evidence and other extrinsic aids need not be utilized. *Id*. at 298.

¶ 65　　Here, the settlement agreement contains general release language and also specifically identifies several matters that are defined as released claims, including the PSA. The trial court held that such release language was specific. Furthermore, a review of the facts in the instant case and the applicable law shows that Garage World's claims for breach of the PSA and fraud in the inducement of the PSA fall within the scope of the release language.

¶ 66　　Garage World's causes of action are based on the allegation that the Fishers did not obtain permits for garages they built in Chicago from 2012 through 2016 and failed to disclose that conduct to Garage World. Garage World alleges the Fishers' conduct fraudulently inflated the purchase price set forth in the PSA and breached the representations and warranties made in the PSA. Garage World thereby asserts causes of action claiming the Fishers and DGW (1) breached the PSA, (2) "made false statements of material fact related to the [PSA] [and] Bill of Sale," and (3) were unjustly enriched by the sale of the company.

¶ 67　　Garage World claims that because it was unaware of the permit issues and the Fishers failed to inform Garage World of the permit issues, claims under the PSA relating to the permit issues were not within the contemplation of the parties and thus were not released. This court has addressed and rejected this exact argument in *Goodman*, where the plaintiff was a trustee of a trust. The plaintiff's first suit was a claim for legal malpractice based on the defendants' negligent failure to file an Illinois estate tax return, and his second suit was for legal malpractice based on the defendants' failure to take allowable deductions in a federal tax return. *Id*. at 286.

¶ 68 The parties entered into a settlement agreement to settle the first litigation, which agreement included a release containing similar language to the instant release, *i.e.*, general release language followed by reference to a specific matter—the "obligations, duties and management or administration of the Estate and/or Trust." *Id.* at 288-89. The plaintiff then learned the defendants failed to take all allowable deductions in a federal tax return and filed a second suit. *Id.* at 289-90. Like Garage World in the instant case, the plaintiff asserted he was unaware the defendants failed to take the deductions, the defendants failed to inform him they had failed to take the deductions, and if the failure had been disclosed, the plaintiff would not have agreed to the settlement agreement. *Id.* at 290. The trial court certified the question of whether a claim that was released and could have been brought in a first suit can be brought in a second suit if the releasor claims he did not contemplate the claim at the time of the release. *Id.* at 292. This is the same question at issue in the instant case.

¶ 69 In analyzing the case, the *Goodman* court, because the plaintiff claimed that he was not aware of the federal tax return issue, did not apply the general language of the release ("known and unknown") but sought to determine if the issue was included in the specific terms of the release. *Id.* at 293-94. The court stated that a specific release bars claims falling within the scope of the release, even if the claims do not explicitly appear in the release. *Id.* at 293. The court held that the federal tax return claim was within the scope of the obligations, duties and management or administration of the estate and trust and as such the second litigation was barred. *Id.* at 293, 297. In the instant case, Garage World's permit claim is similarly within the scope of the PSA. The *Goodman* court held that the claim was released even though matters relating to the federal

tax return were not specifically contemplated by the parties. *Id*. at 297. And, because the claims fell within the specific language of the release, the court need not consider extrinsic evidence as to whether the parties contemplated federal tax return claims in executing the release. *Id*. at 298.

¶ 70     Garage World's claim that the Fishers and DGW committed fraud by not disclosing the permit issues does not make the instant case distinguishable from *Goodman*. The plaintiff in *Goodman* could have made the same claim by asserting the federal tax return issue was not disclosed. However, *Goodman*'s holding that a claim need only be within the "scope" of the released claims and need not explicitly appear in the release makes clear it is not necessary to specifically identify each possible claim but rather only to provide notice to each party of the scope of claims it is releasing and that unknown and undisclosed claims can be included in that scope. *Id*. at 293. It is unreasonable to require parties to a release to imagine and list every possible claim, for example, relating to the administration of an estate or a purchase and sale transaction. The parties knowingly release all those possible claims by virtue of entering into the agreement.

¶ 71     Garage World's claims relating to the permit issue occurred prior to the effective date of the settlement agreement, arise out of, and relate directly to the PSA and the bill of sale agreement, and constitute claims based in contract, fraud and equity. As such, the claims raised by Garage World are included within the scope of specific terms of the release and are barred.

¶ 72                                     3. Ambiguity

¶ 73     Next, Garage World contends the settlement agreement is ambiguous. Garage World first focuses on the all-encompassing nature of the release. The clear intent of the parties to release all possible claims is certainly probative but again that general language is not directly relevant to the

issue at hand—whether the causes of action in Garage World's complaint are released. As discussed above, it is the specific language in the release that determines whether those claims are barred. The settlement agreement specifically releases "claims which arise out of or are related to facts or events that occurred prior to the Effective Date of this Agreement including but not limited to, the PSA, the Bill of Sale Agreement, the Escrow Agreement \*\*\*, the Earn-Out Payments, the Yellowbook Invoices or the Consulting Agreements \*\*\*."

¶ 74    According to Garage World, that language is ambiguous because the underlying claim leading to the settlement agreement was the dispute over Garage World's failure to release the earn-out payments. Garage World argues that the settlement agreement should be interpreted to release only the earn-out payments issue and any other matter mentioned in the settlement agreement is necessarily ambiguous and unenforceable. Garage World cites to no authority to support limiting a settlement agreement to one issue or implying that only the exact issue involved in a first suit is released in a second suit. The language of the settlement agreement further contradicts Garage World's position. The release treats the earn-out payment issue in an identical manner as the PSA and several other specific issues. There is no distinction whatsoever between the release of matters arising out of the PSA, matters arising out of the earn-out payments or matters arising out of the consulting agreements.

¶ 75    A contract is considered ambiguous where "it is capable of being understood in more sense than one." *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). That definition does not mean an agreement that releases more than one issue; rather, it means the words being used can be construed in different ways. The words in the settlement agreement are not capable of

being understood in more than one sense. The meaning of earn-out payments is clear. The meaning of the PSA is clear. The meaning of the consulting agreements is clear. Garage World brought claims alleging breach of contract and fraud relating to the PSA. There is no ambiguity as to whether a release of claims that arise out of or are related to the PSA apply to Garage World's claims just as there would be no ambiguity if Garage World brought claims arising out of the earn-out payments or the consulting agreements. Here, the general release language in the settlement agreement is wholly consistent with the parties' intent to release any and all claims relating to the PSA and the other cited issues. Garage World was aware it was releasing all claims relating to the PSA, including claims that it was unaware of, and which could have affected the purchase price or other aspects of the sale transaction.

¶ 76    Garage World argues that its allegation of fraud in the making of the PSA is determinative to the court's ruling on the motion to dismiss Garage World's complaint. We disagree. Rather, the issue is whether the undisclosed claim was or was not clearly within the scope of the parties' settlement agreement. That conclusion is a question of law and does not require or allow consideration of parol evidence to determine the parties' intent unless or until it is determined the claims are not within the scope of the release.

¶ 77    Further, even under a regular fraud analysis, Garage World's claim fails. In order to establish fraud sufficient to set aside or void a contract, Garage World must establish it justifiably relied on a misrepresentation. *Tower Investments, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1030 (2007). With respect to the settlement agreement, there was no misrepresentation (the Fishers and DGW made no affirmative representations or warranties in the

settlement agreement), but rather an alleged omission by failure to disclose the permit issue. However, an intentional concealment of a material fact is actionable only where there is a special or fiduciary relationship, which would raise a duty to speak. *Thornwood*, *Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 25 (2003). Garage World does not and cannot allege such a relationship.

¶ 78    And, as a matter of law, Garage World cannot establish reliance upon a previous misrepresentation because Garage World expressly agreed in the settlement agreement that it was not relying upon any prior representations or statements. The settlement agreement provides:

> "8. <u>Prior Understandings</u>. This Agreement contains the entire agreement between the Parties with respect to the subject matter of this Agreement, is intended as a final expression of the Parties' agreement with respect to such terms that are included in this Agreement, *** and supersedes all negotiations, stipulations, understandings, agreements, representations and warranties *** with respect to such subject matter, which precede or accompany the execution of this Agreement."

The Settlement Agreement further provides:

> "9. <u>Non-Reliance</u>. *** The Parties are not relying on representations or statements made by the other Party or any person representing it except for the statements and warranties expressed in this Agreement."

Under Illinois law, these provisions evidence that Garage World's reliance upon prior representations was not justified. *Tirapelli*, 351 Ill. App. 3d at 457-58; *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 127 (1995).

¶ 79    Garage World alleges the Fishers and DGW made misrepresentations in the PSA and regarding the value of the company at the time of sale. These alleged misrepresentations occurred on or before January 31, 2017, and are thus prior representations expressly addressed and waived by the settlement agreement. Garage World's agreement that it was not relying on representations or statements made by the Fishers and DGW except for the statements and warranties expressed in the settlement agreement preclude it from proving justifiable reliance and bars any claim of fraud in relation to the settlement agreement.

¶ 80    Finally, Garage World argues that this court should use the duty of good faith and fair dealing to construe the parties' intent regarding the settlement agreement. As noted above, the duty of good faith and fair dealing is not relevant to the analysis in this case. Furthermore, Garage World never raised this issue in the trial court and has forfeited its right to do so on appeal. *Tirapelli*, 351 Ill. App. 3d at 457.

¶ 81    We conclude that the clear terms of the release bars Garage World's claims of breach of contract, fraud and unjust enrichment. Accordingly, we hold that the circuit court did not err when it dismissed Garage World's complaint with prejudice pursuant to section 2-619(a)(6) of the Code based on the unambiguous language of the release.

¶ 82                                III. CONCLUSION

¶ 83    For the foregoing reasons, we affirm the judgments of the circuit court that (1) granted summary judgment in favor of the Fishers and against Garage World in the 2019 case involving the consulting agreements (case No. 1-21-0360), and (2) dismissed with prejudice Garage World's

complaint against the Fishers and DGW in the 2021 case as barred by the parties' settlement agreement (case No. 1-21-0778).

¶ 84    No. 1-21-0360, Affirmed.

¶ 85    No. 1-21-0778, Affirmed.